United States Court of Appeals
for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
April 18, 2024
Lyle W. Cayce
Clerk

No. 23-10696

―――――

Oklahoma Firefighters Pension and Retirement System,

*Plaintiff—Appellant*,

Key West Police & Fire Pension Fund,

*Movant—Appellant*,

*versus*

Six Flags Entertainment Corporation; James Reid-Anderson; Marshall Barber,

*Defendants—Appellees*.

―――――

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-201

―――――

Before Wiener, Haynes, and Higginson, *Circuit Judges*.

Haynes, *Circuit Judge*:[*]

Oklahoma Firefighters Pension and Retirement System and Key West Police & Fire Pension Fund appeal the District Court's (1) grant of the

―――――

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

motion for judgment on the pleadings filed Six Flags Entertainment Corporation, its then Chief Executive Officer James Reid-Anderson, and its then Chief Financial Officer Marshall Barber; (2) denial of Key West's motion to intervene; and (3) denial of Oklahoma Firefighters' motion for leave to file an amended complaint.  For the reasons set forth below, we REVERSE and REMAND.

## I.  Background

This is the second appeal in this securities fraud class action case.  Because the underlying facts of this case are set forth in detail in *Oklahoma Firefighters Pension & Retirement System v. Six Flags Entertainment Corp.*, 58 F.4th 195 (5th Cir. 2023) ("*Oklahoma I*"), we recount only those facts that are necessary to understand the disposition of this appeal.

### A. Facts[1]

In the early 2010s, Six Flags[2] put into place a series of strategic incentive plans that entitled c-suite executives to substantial equity awards if the company met its goals regarding earnings before interest, taxes, depreciation, and amortization ("EBITDA").  In 2014, in an effort to increase its EBITDA, Six Flags entered into a licensing agreement with Riverside Investment Group ("Riverside"), a Chinese real estate developer, to develop multiple Six Flags-branded theme parks in China.  Under this agreement, Six Flags received initial fees during the parks' development, and then substantial licensing and management fees once the parks opened.  Thereafter, Six Flags announced the development of eleven parks at three

---

[1] For purposes of this appeal, we assume all facts are true as alleged in the amended, consolidated class action complaint.

[2] Unless otherwise noted, we refer to all defendants collectively as "Six Flags" for simplicity.

different locations in China. Three parks were slated to open in 2019; four in 2020; and the other four, 2021.

However, according to the amended complaint, from April 24, 2018, until February 19, 2020 (the "Class Period"), Six Flags made numerous material misstatements and omissions about the development of these theme parks in China and relating to its business partner, Riverside. Six Flags' alleged material misstatements and omissions can be broadly grouped into four categories.[3] First, Six Flags misled investors by continually representing that the parks' opening dates remained on track. Second, Six Flags misrepresented to investors that construction on these parks continued to progress. Third, Six Flags assured investors that Riverside had the necessary funding and financial wherewithal to complete construction of the parks and meet its contractual obligations under their licensing agreements. Fourth and finally, Six Flags improperly recognized revenue for these parks under U.S. Generally Accepted Accounting Principles ("GAAP").[4] These statements were false because, among other reasons, the local Chinese government had effectively withdrawn its support for some of the projects and Riverside lacked much of the necessary funding and employees to make meaningful progress on the construction of the parks, let alone to remain current on its licensing payments to Six Flags.

Later in 2019, Six Flags began speaking more cautiously about the parks—though it still assured investors that there was "ongoing building"

---

[3] The parties and the district court also identified these four categories of alleged misstatements.

[4] As permitted under GAAP, Six Flags recognized revenue from its licensing agreements with Riverside to the extent that Riverside made licensing payments under the agreements and made progress on the development of the parks.

and "no delays" to the new opening timelines. On October 23, 2019, however, Six Flags admitted that the China parks could be further delayed, disclosing that there was "a very high likelihood going forward that we will see changes in the timing of the park openings." A little less than a week later, Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters") started purchasing Six Flags' stock.

On January 10, 2020, Six Flags disclosed that Riverside had defaulted on its payment obligations, which could lead "to the termination of all the Six-Flags-branded projects in China." As a result, Six Flags expected "a negative $1 million revenue adjustment" and "aggregate one-time charges of approximately $10 million."

On February 20, 2020, Six Flags announced the termination of its agreements with Riverside and that Barber would retire as CFO. During the class period, Six Flags' stock declined from a high of $73.38 on June 22, 2018, to close at $31.89 on February 20, 2020, the company's lowest stock price in over seven years.

### B. Procedural History

In February 2020, Electrical Workers Pension Fund, Local 103, International Brotherhood of Electrical Workers ("Local 103"), filed a class action lawsuit against Six Flags for alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 on behalf of all persons and entities that purchased Six Flags' common stock between April 25, 2018, and January 9, 2020. Thereafter, the district court appointed Oklahoma Firefighters and Local 103 as co-lead plaintiffs.

The co-lead plaintiffs then filed an amended and consolidated class action complaint against Six Flags, amending the class period to include all purchasers of Six Flags' common stock from April 24, 2018, to February 19,

2020. Six Flags moved to dismiss under Rule 12(b)(6). The district court granted Six Flags' motion. On appeal, we reversed and reinstated the vast majority of Oklahoma Firefighters' claims. As pertinent here, we evaluated whether Oklahoma Firefighters had adequately pleaded that Six Flags made material misstatements regarding the four categories. For the misstatements relating to the timing of the parks' opening dates, we concluded:

> By late 2019, however, Defendants' language had changed. According to the complaint, during the October 2019 earnings call, "Defendant Barber denied that there was 'any material change in the time line of China over the last 90 days.'" But in the full exchange on that call, Defendant Reid-Anderson admitted there was a "very high likelihood going forward that we will see changes in the timing of park openings" and that it was "unrealistic" to think the timelines would hold.
>
> *Therefore, we hold that the statements before October 2019 satisfy the pleading standard, but, because Defendants had adequately tempered their optimistic language by October, the later allegations do not.*

*Oklahoma I*, 58 F.4th at 218 (emphasis added). Thus, we held that the October 22 and 23, 2019, alleged misstatements and/or omissions were not actionable as a matter of law.

On remand, Oklahoma Firefighters filed a motion for leave to file an amended complaint, seeking to substitute Local 103 with Key West. In response, Six Flags moved for judgment on the pleadings, arguing that Oklahoma Firefighters lacks Article III standing because it purchased its Six Flags' stock after the alleged October 23, 2019, corrective disclosure. Thereafter, Key West moved to intervene. The district court granted Six

5

Flags' motion for judgment on the pleadings, and denied both Oklahoma Firefighters' motion for leave to file an amended complaint and Key West's motion to intervene. Oklahoma Firefighters and Key West timely appealed.

## II. Jurisdiction & Standards of Review

The district court had jurisdiction under Securities Exchange Act § 27, 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331 and 1337. We have jurisdiction under 28 U.S.C. § 1291.

"We review the grant of a judgment on the pleadings de novo, utilizing the same standard as a motion to dismiss under Rule 12(b)(6)." *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 504 (5th Cir. 2019) (internal quotation marks and citation omitted). We "accept all factual allegations in the complaint as true," and the "complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quotation omitted).

We review "[a] district court's decision denying intervention of right" under Federal Rule of Civil Procedure 24(a)(2) de novo. *Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 202 (5th Cir. 2016).

We "review a district court's denial of leave to amend under Rule 15(a) for an abuse of discretion." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000). "A district court abuses its discretion [when] it . . . relies on erroneous conclusions of law." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (quotation omitted) (cleaned up).

## III. Discussion

The primary issues on appeal are whether the district court erred in: (1) granting Six Flags' motion for judgment on the pleadings by concluding that Oklahoma Firefighters lacks Article III standing; and

(2) denying Oklahoma Firefighters' motion for leave to file an amended complaint and Key West's motion to intervene as a lead plaintiff. As explained more fully below, the district court erred on both issues.

### A. Six Flags' motion for judgment on the pleadings

This issue turns on whether we held in *Oklahoma I* that the alleged fraud was fully disclosed by October 2019. If we did, Six Flags argues, Oklahoma Firefighters lacks Article III standing because it purchased Six Flags' stock after the fraud was fully disclosed, meaning Oklahoma Firefighters' injury in fact is not fairly traceable to Six Flags' alleged misstatements.

To allege Article III standing in the securities class action context, a plaintiff must allege that when the defendant's fraud was revealed, the plaintiff's stock price declined. *See Martone v. Robb*, 902 F.3d 519, 524 & n.11 (5th Cir. 2018).[5] Thus, if a plaintiff purchased a defendant's stock after the fraud was revealed, the plaintiff's injury in fact—the economic loss associated with a decline in stock price—is not fairly traceable to the defendant's fraud. *Cf. Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 472 (2013) (explaining that "a plaintiff whose relevant transactions were not executed between the time the misrepresentation was made and the time the truth was revealed cannot be said to have indirectly relied on the misrepresentation through its reliance on the integrity of the market price").

---

[5] Oklahoma Firefighters cites to *7547 Corp. v. Parker & Parsley Development Partners, L.P.*, 38 F.3d 211 (5th Cir. 1994) as establishing the requirements of Article III standing for a securities fraud class action. But that decision relied on *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952) and *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), both of which have been construed as delineating the requirements for statutory standing. *See, e.g.*, *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 86 (2d Cir. 2022). So, *7547 Corp.* is inapposite.

As a theoretical matter, we agree with Six Flags that if a plaintiff purchased stock after the fraud was fully disclosed, the plaintiff's injury in fact would not be fairly traceable to the alleged misstatements. However, a clear review of the facts, as stated in the prior opinion, demonstrates that this did not occur in the present case. Importantly, we never held in *Oklahoma I* that the fraud was fully disclosed by October 2019. Instead, we clearly held that Six Flags' October 2019 statements about the parks' opening dates were not actionable because, by October, Six Flags had adequately tempered its optimistic language about the parks' opening dates. The upshot of this holding is that Oklahoma Firefighters' injury can relate to other false statements but not to the opening dates misstatements because Oklahoma Firefighters purchased Six Flags' stock after that portion of the fraud was disclosed. But, of course, there was a number of other claimed frauds still in play.

Any fair reading shows why our prior opinion very clearly did not hold the alleged fraud was fully disclosed by October 2019. The most obvious sign is the absence of any statement expressly concluding that all purported fraud was fully disclosed by October 2019 and that therefore, the class period was truncated. Given that such a conclusion would all but end the case as to Oklahoma Firefighters, it stands to reason that if that was actually our decision, we would have said so explicitly. To borrow a familiar phrase from statutory interpretation principles, we do not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 467–68, (2001).

Another very clear sign that we were only addressing Six Flags' alleged misstatements relating to the parks' opening dates is the structure of our opinion. In evaluating whether Oklahoma Firefighters had adequately pled that Six Flags' alleged misstatements were affirmatively false or misleading when made, we adopted *the exact same structure* used by the

district court and the parties—organizing the alleged misstatements into four categories: (1) Riverside's financial condition and quality as a partner; (2) the parks' construction progress; (3) the projected parks' opening dates; and (4) Six Flags' revenue recognition from the international licensing agreements.[6] We then proceeded to analyze these categories of alleged misstatements by year, ending with the 2019 alleged misstatements relating to the projected parks' opening dates. In other words, we treated these as different alleged frauds.

Despite receiving our prior opinion,[7] the district court misapplied the very doctrine it sought to adhere to, parsing our prior opinion like the "language of a statute" to reach an incorrect outcome when context and common sense suggested otherwise. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373 (2023) ("[T]he language of an opinion is not always to be parsed as though we were dealing with language of a statute. . . . and [opinions] must be read with a careful eye to context." (internal quotation

---

[6] The first three categories of alleged misstatements were addressed under II.B and III.B. of our prior opinion while the fourth category was addressed under a separate section altogether.

[7] Six Flags also argues that we must have concluded the alleged fraud ended by October 23, 2019, because otherwise, we would have concluded there were actionable omissions in the October 22 and 23, 2019 disclosures. This argument conflates falsity with causation, which are two separate requirements of pleading a § 10(b) and Rule 10b-5 claim. *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 791 (9th Cir. 2020). Moreover, for purposes of a class action, the fraud ends, and the class period closes, when the fraud is fully revealed, not when a defendant stops making misleading statements. *See Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1261 (11th Cir. 2014) (remanding to the district court to clarify the end date of the class period because the last corrective disclosure occurred on January 20 before the market opened for trading and therefore those individuals who purchased shares on January 20 should likely be excluded from the class).

marks and citation omitted)). We reverse the district court's lack of standing dismissal of Oklahoma Firefigthers.

### B. Oklahoma Firefighters' motion to amend and Key West's motion to intervene

The district court also erred by denying Key West's motion to intervene. The main basis for the district court's denial of this motion was its holding that Oklahoma Firefighters lacked Article III standing. Because we hold that Oklahoma Firefighters has standing, the district court's denial of this motion cannot survive on that ground. But even if Oklahoma Firefighters did not have Article III standing, the district court still would have erred by denying Key West's motion to intervene (which Key West filed, not just Oklahoma Firefighters). We have held "[w]hen a separate and independent jurisdictional basis exists a federal court has the discretion to treat an intervention as a separate action, and may adjudicate it despite dismissal of the main demand if failure to do so might result in unnecessary delay or other prejudice." *Arkoma Assocs. v. Carden*, 904 F.2d 5, 7 (5th Cir. 1990) (per curiam); *see also Harris v. Amoco Prod. Co.*, 768 F.2d 669, 676 (5th Cir. 1985) ("The law of this circuit is that there are circumstances in which an intervenor can continue to litigate after dismissal of the party that originated the action."). As such, even if Oklahoma Firefighters lacked Article III standing, which it does not, this would not be dispositive of Key West's motion to intervene since Key West purchased Six Flags' stock prior to any alleged disclosure of the fraud and thus would have Article III standing.

Key West argues that it has the right to intervene. We agree. At the time Key West filed its motion to intervene, the class certification had not been decided. Thus, it was a member of the putative class. The Supreme Court has provided greater protections to *putative* classes than independent

No. 23-10696

third parties. *See, e.g.*, *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 550–52 (1974) (holding that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class action complaint, i.e., the putative class); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 n.5 (1980) (explaining "the district court has a responsibility" prior to dismissal and after denial of class certification "to provide an opportunity for intervention by a member of the putative class for the purpose of appealing the denial of class certification").[8]

Turning to the intervention, there is no question that Key West bought stock before any of the alleged fraud was revealed. Accordingly, it is a proper party to intervene and should be allowed to do so. Thus, we reverse and remand to the district court to allow Key West to intervene to allow a party that has standing on all of the issues to be part of the case. *See Ford v. City of Huntsville*, 242 F.3d 235, 239–41 (5th Cir. 2001) (per curiam) (addressing in the first instance the Rule 24(a)(2) factors and reversing the district court to allow the appellant to intervene on remand).

Finally, because the only basis for denying the amendment that Oklahoma Firefighters requested was the erroneous determination of no standing, we reverse and remand for the district court to address, in the first instance, whether Oklahoma Firefighters has satisfied the requirements of Rule 15(a).

---

[8] We are also unconvinced that *Krim v. pcOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005) calls for a different result. There, at the time the motion to intervene was filed, class certification had been denied so there was no longer any putative class. *See id.* at 492–93, 502.

11

## IV.  Conclusion

For the reasons set forth above, we REVERSE and REMAND. Oklahoma Firefighters shall remain in the case and Key West shall be allowed to intervene. The district court shall then consider the amendment motion on its merits.